```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CHARLES D. IZAC, | |
| Petitioner, | Civil Action No. 10-5865 (JBS) |
| v. | |
| J. L. NORWOOD et al., | **MEMORANDUM OPINION & ORDER** |
| Respondents. | |

IT APPEARING THAT:

1. On August 11, 2010, the Clerk received Petitioner's first § 2241 application and opened first Izac v. Norwood matter, indexed as Civil Action No. 10-4112 (D.N.J.) ("Izac-I").

2. Two weeks later, i.e., on August 25, 2010, the Clerk received Petitioner's second § 2241 application and opened second Izac v. Norwood matter, indexed as Civil Action No. 10-4366 (D.N.J.) ("Izac-II").

3. Later same day, i.e., still on August 25, 2010, the Clerk received Petitioner's third § 2241 application and opened third Izac v. Norwood matter, indexed as Civil Action No. 10-4367 (D.N.J.) ("Izac-III").

4. Twenty days later, i.e., on September 15, 2010, the Clerk received Petitioner's fourth § 2241 application and opened fourth Izac matter, Izac v. Zickefoose, indexed as Civil Action No. 10-4744 (D.N.J.) ("Izac-IV").

5. On September 23, 2010, Judge Renée M. Bumb, presiding over Izac-I, Izac-II, Izac-III and Izac-IV matters, issued a Memorandum Opinion and Order ("Multi-action Order") dismissed all four Petitioner's § 2241 applications. See, e.g., Izac-I, Docket Entry No. 2. The Multi-action Order, stated, in relevant part, as follows:

> In his Izac-I and Izac-II matters, Petitioner challenges his housing at a facility which has the level of security higher than minimum (or, in alternative or in conjunction, the delay he might be facing in being transferred to a minimum security facility). See Izac-I, Docket Entry No. 1, and Izac-II, Docket Entry No. 1.
>
> Petitioner's claims raised in Izac-I and Izac-II cannot be entertained in a habeas matter. The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:
>
>> [W]henever the challenge ultimately attacks the "core of habeas" - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.
>
> Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).
>
> Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's

> incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to being placed in a particular federal prison); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief is unavailable to inmate seeking release from disciplinary segregation to general population). Therefore, Petitioner's Izac-I and Izac-II challenges will be dismissed for lack of jurisdiction; such dismissal will be without prejudice to Petitioner's filing of a timely civil complaint raising these challenges.

Id. at 2-4.

6. On November 8, 2010, the Clerk docketed a transfer order issued by the United States District Court for the Northern District of Virginia ("N.D. Va."). See Instant Matter, Docket Entry No. 4. The transfer order indicated that Petitioner initiated another § 2241 matter, Izac v. Norwood, Civil Action No. 10-4112 (N.D. Va.) ("Izac-V"); that matter was wrongly venued with the N.D. Va. Therefore, the N.D. Va. transferred the Izac-V matter to this District, pursuant to the holding of Rumsfield v. Padilla, 542 U.S. 426 (2004). See Instant Matter, Docket Entry No. 4. The docket sheet in Izac-V indicated that Petitioner initiated Izac-V on November 5, 2010, see Instant Matter, Docket Entry No. 5, at 1, i.e., six weeks after Judge Bumb issued the Multi-action Order dismissing Izac-I, Izac-II, Izac-III and Izac-IV matters and detailing to Petitioner the critical shortcomings of his § 2241 applications.

7. On November 15, 2010, the Izac-V matter was assigned to the undersigned.

8. Petitioner's § 2241 application filed in Izac-V:

   a. recited, effectively, the same challenges that were raised and dismissed in Petitioner's Izac-I and Izac-II matters. See Instant Matter, Docket Entry No. 1, at 3-4 (asserting that Petitioner: (i) was wrongfully denied transfer to a minimum security facility; (ii) suffered an "injury" awaiting for a classification allowing – but by no means mandating – his transfer to such facility; and (iii) was wrongfully denied transfer from his current "low" security facility to another "low" security facility that he preferred); and

   b. added another, fourth, line of challenges, asserting a closely-related set of contentions, i.e., that Petitioner was wrongfully denied a transfer from his current facility to another facility (which Petitioner perceived as being located "closer to [his family's] home"). Id. at 5. Petitioner asserted that such denial "create[d a] hardship on [Petitioner's] family with respect to travel." Id.

9. Petitioner's statements made in Izac-V with regard to exhaustion of administrative remedies unambiguously established that Petitioner was challenging four different administrative determinations, each reached with regard to a separate lines of grievances, which jointly composed the four lines of challenges outlined in ¶8, supra. See id. at 3-5 (providing four different time lines of his for different lines of administrative filings).

10. The petition in Izac-V closed with a request for relief in the form of "[t]ransfer to Mid-Atlantic Region in order to strengthen [Petitioner's] family ties, and so as not to be subjected to malicious and vindictive practices." Id. at 6.

11. The first three lines of Petitioner's challenges (based on allegedly delayed classification allowing but by no means mandating Petitioner's transfer to a minimum security facility, denial of transfer to a minimum security facility, and denial of transfer from one low-security facility to another) are facially barred by the doctrine of res judicata,[1] since Judge Bumb

---

[1] Pursuant to the doctrine of res judicata, a judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991). The purpose of res judicata doctrine is to avoid "relitigation of the same claims, expense to litigants and inconsistent results." Avins v. Moll, 610 F. Supp. 308, 316 (D.C. Pa. 1984); see also Brown v. Felsen, 442 U.S. 127, 131 (1979); Jett v. Beech Interplex, Inc., 2004 U.S. Dist. LEXIS 13352, at * 2 (E.D. Pa. July 15, 2004) ("The purposes underlying the doctrine are to conserve judicial resources, establish certainty and respect for court judgments, and to protect the party that relies on prior adjudication from vexatious litigation"). The three

conclusively disposed of these challenges in Izac-I and Izac-II by dismissing Petitioner's § 2241 claims for lack of habeas jurisdiction and without prejudice to Petitioner's raising his challenges by means of civil complaint.

12.   Moreover, Petitioner's fourth line of challenges (asserting "hardships" as a result of the geographic distance between Petitioner's place of confinement and the location of his family home) also appears to be barred by the doctrine, since res judicata applies to both claims that were actually brought in addition to claims which *could* have been brought in the prior action. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) (emphasis supplied).

13.   To add, even if Petitioner's aforesaid fourth line of challenges (based on "hardship") were not precluded by the doctrine of res judicata, this line of challenges has to be dismissed on (a) procedural, (b) jurisdictional and (c) substantive grounds.

    a.   "Habeas Rules do not envision . . . a lump-sum challenge to the circumstances which a litigant might find himself/herself in.  Rather, pursuant to

---

prong test for the application of res judicata requires: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." EEOC v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990). Importantly, "res judicata will 'not be defeated by minor differences of form, parties or allegations' where the 'controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'" Jett, 2004 U.S. Dist. LEXIS 13352, at * 2.

       Habeas Rule 2(e), Petitioner is obligated to submit a separate habeas application challenging each particular determination, i.e., he cannot challenge different determinations in one action.  See 28 U.S.C. § 2254 Rule 2(c), applicable to § 2241 petitions through Habeas Rule 1(b).  Therefore, Petitioner shall select, for the purposes of each his . . . habeas action, the particular [administrative] determination . . . he wishes to challenge, and then file an individual petition with regard to each specific challenge." Alou v. Holder, 2010 U.S. Dist. LEXIS 113717, at *2-3 (D.N.J. Oct. 22, 2010).  Here, Petitioner lumped his challenges to four different administrative determination in one § 2241 application.  Such submission violates the requirements of Habeas Rule 2(e) and, thus, necessitates dismissal on procedural grounds.

  b.  In addition, Petitioner's challenges asserting "hardship" that he, personally, experiences as a result of being housed in a facility which he finds to be situated too far from the locale of his family home are subject to dismissal for lack of jurisdiction on the grounds already detailed to

Petitioner by Judge Bumb in <u>Izac-I</u> and <u>Izac-II</u>. Indeed, one of the decisions relied upon by Judge Bumb in her Multi-action Order, namely, <u>Ganim v. Federal Bureau of Prisons</u>, 235 Fed. App'x 882, addressed challenges virtually identical to those raised by Petitioner in this fourth line of claims.[2]

---

[2] In <u>Ganim</u>,

Petitioner "requested to be transferred to a suitable FCI camp, which was closer to his home." Id. Petitioner based his request on the language of the Program Statement 5100.07. . . . In support of his application, Petitioner attaches letters from Petitioner's spouse and various other relatives asserting that traveling to [his place of confinement] burden[ed] their lifestyles and budget. . . . The "To Whom It May Concern'" letter [from] Petitioner's spouse, specifie[d] that Petitioner's older sons, one of whom [was] "an avid gymnast" and another, who "play[ed] soccer, baseball and basketball," experience[d] time conflicts between their sport practices and visits to Petitioner, since the latter [were] time consuming because of the need to commute to [Petitioner's place of confinement]. In addition, the spouse's letter state[d] that Petitioner's youngest son "misse[d] his Dad terribly and it would benefit him a great deal if [Petitioner] were closer and he could see him more." In addition, the spouse's letter observe[d] that, since "the price of gas has gone up considerably," the gasoline cost of visitations burden[ed] the spouse's budget. . . . Finally, a letter from Petitioner's mother state[d] that many other Petitioner's relatives [were] similarly inconvenienced by the need to commute to [his place of confinement] because Petitioner "ha[d] four brothers and three sisters [and] there [were] many nieces and nephews," coordinated trips of which present[ed] a challenge in planning.

<u>Ganim v. Fed. Bureau of Prisons</u>, 2006 U.S. Dist. LEXIS 56477, at *1-2 and n2 (D.N.J. July 31, 2006) (language of Footnote 2

8

Finding that the district court in Ganim erred by dismissing the petition on merits (rather than for lack of jurisdiction), the Court of Appeals observed:

> We must first determine if [Petitioner] could proceed under 28 U.S.C. § 2241. The language of § 2241, as well as the common-law history of the writ of habeas corpus, define the essential purpose of the writ - to allow a person in custody to attack the legality of that custody. See Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). However, a federal prisoner may challenge the execution of his sentence in a petition pursuant to § 2241. See Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001). "[T]he precise meaning of 'execution of a sentence' [remains] hazy." Woodall, 432 F.3d at 242. In Woodall, considering rulings from the Courts of Appeals of the Second, Sixth, Ninth, and Tenth Circuits, and the plain meaning of the term "execution" (to put into effect or carry out), we allowed a § 2241 challenge to regulations that limited a prisoner's placement in a community correction center ("CCC"). See id. at 243. We noted that "[c]arrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution." Id. Specifically, in finding Woodall's action properly brought pursuant to § 2241, we determined that "placement in a CCC represents more than a simple transfer." Id. We stated that "Woodall's petition crosse[d] the line beyond a challenge to, for example, a garden variety prison transfer." Id.

---

incorporated in the main text) (citations to docket entries omitted).

> [Here, Petitioner], who challenges a decision not to transfer him from federal prison in New Jersey to a similar facility in New York, does not cross the line that Woodall crossed. [Petitioner] presents a challenge to a decision relating to a simple or garden variety transfer. . . . Accordingly, the District Court was without jurisdiction to consider [the merits of the] petition. We will therefore vacate the District Court's order denying [the] petition [on merits]. On remand, the District Court is instructed to dismiss [the] petition for lack of jurisdiction.

Id. at 882-84.

Therefore, Petitioner's challenges asserting "hardships" he is allegedly suffering in connection with denial of his request for transfer to another facility, located closer to his family home, are subject to dismissal for lack of jurisdiction.[3]

c.  Finally, Petitioner lacks standing to bring claims on behalf of his family members, see Whitmore v. Arkansas, 495 U.S. 149, 154-64 (1990) (detailing the test for jus tertii representation), and – in any event – Petitioner's family members' habeas

---

[3] The same applies to Petitioner's "retaliation" challenges: as Judge Bumb already explained to Petitioner, such challenges cannot be raised by means of a habeas petition. Hence, this challenges are subject to dismissal for lack of jurisdiction, without prejudice to Petitioner's filing a civil complaint stating these challenges.

10

challenges would, too, be subject to dismissal for lack of jurisdiction, on the grounds stated supra.

IT IS, therefore, on this **7th** day of **December**, 2010,

ORDERED that Petitioner's § 2241 application is dismissed on the grounds of the doctrine of res judicata and Petitioner's failure to comply with Habeas Rule 2(e) requirements, and/or on the grounds of lack of jurisdiction and lack of standing to sue; and it is further

ORDERED that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Petitioner by regular U.S. mail and close the file on this matter.

       **s/ Jerome B. Simandle**
**JEROME B. SIMANDLE**
**United States District Judge**